Ricky L. WEST *v.* STATE of Arkansas

CA CR 88-145                                    766 S.W.2d 22

Court of Appeals of Arkansas
Division I
Opinion delivered March 1, 1989

*William R. Simpson, Jr.*, Public Defender, by: *Bret Qualls*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

50

MELVIN MAYFIELD, Judge. Appellant, Ricky L. West, was convicted in a jury trial of rape and was sentenced to ten years in the Arkansas Department of Correction. He argues on appeal that the trial court erred in failing to direct a verdict in his favor because the prosecution failed to prove "forcible compulsion," and that the court erred in refusing to allow him to question the victim about a prior misdemeanor conviction for hindering apprehension. We affirm.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982). A trial court should grant a directed verdict only when there is no evidence from which the jury, without resorting to surmise and conjecture, could have found the defendant guilty. *Nichols* v. *State*, 280 Ark. 173, 655 S.W.2d 450 (1983). We must affirm the jury's verdict if it is supported by substantial evidence. *Robinson* v. *State*, 291 Ark. 212, 723 S.W.2d 818 (1987). Substantial evidence has been defined as evidence of sufficient force and character that it will compel a reasonable mind to reach a conclusion one way or the other. *Honea* v. *State*, 15 Ark. App. 382, 695 S.W.2d 391 (1985). There must, however, be substantial evidence to support every element of the offense. *Norton* v. *State*, 271 Ark. 451, 609 S.W.2d 1 (1980).

At trial, the victim testified she had been to the Central Baptist Hospital and was walking home when appellant stopped his car and asked where she was going. Thinking she recognized appellant, she began talking to him before realizing she did not know him. However, she accepted a ride from appellant and he took her home. She testified she asked appellant if he would drive her downtown and he agreed, so after going into her house for a minute, she then got into appellant's car again, but instead of going directly downtown, they decided to have a beer and smoke a "joint." They stopped at a liquor store, where appellant bought a 40-ounce beer and two cups, then drove out Arch Street Pike.

Under the Interstate 30 bridge over Arch, the appellant pulled off the road and the car got stuck. He got out, taking the beer with him, and sat down under the bridge where the victim joined him. After sharing the beer and a marijuana cigarette, appellant became aggressive. According to the victim, appellant

held her by the arm, struck her on the shoulder several times with his fist, then raped her. She testified that she was very frightened and felt if she did not do what he told her, "He probably would have killed me. I don't know. All kinds of things just ran through my head." The victim described in some detail the activity in which she was forced to engage, including both oral and vaginal sex. She said she finally got loose, ran to the road and flagged down a car. The lady driving the car opened a door and the victim got into the car. Shortly thereafter, a sheriff's car stopped, and the officer was told that a rape had occurred. He then arrested the appellant who was seen running from under the bridge.

Appellant first argues that a directed verdict should have been granted because the prosecution failed to prove forcible compulsion. It is argued that the doctor who examined the victim testified he did not find any bruises on her or other evidence of trauma and that she appeared calm, although bewildered.

In *Spencer v. State*, 255 Ark. 258, 499 S.W.2d 856 (1973), the Arkansas Supreme Court stated:

> As long ago as 1878, this court, in *Bradley v. State*, 32 Ark. 704, said:
>
> > It is often a matter of great difficulty in trials for rape, and of assaults with intent to commit rape, to determine whether the act complained of was done with or without force, and whether with or without the consent of the party complaining, and this arises from the peculiar character and surroundings of the offense charged.
>
> > Force is an essential element in the crime of rape. The term is general, and in its application the quantum of force is not to be taken into consideration, *provided the act be consummated against the will of the female.*

255 Ark. at 261-62 (emphasis in *Spencer*). More recently in *Canard v. State*, 278 Ark. 372, 646 S.W.2d 3 (1983), the court said:

> Forcible compulsion is defined in Ark. Stat. Ann. § 41-1801(2) (Repl. 1977) [now codified as Ark. Code Ann. § 5-

14-101(2) (1987)]: " 'Forcible compulsion' means physical force, or a threat, express or implied, of death or physical injury to or kidnapping of any person." In *Spencer v. State*, 255 Ark. 258, 499 S.W.2d 856 (1973) we stated that the quantum of force need not be considered as long as the act is committed against the will of the victim.

278 Ark. at 374.

It has repeatedly been held that a rape victim's testimony satisfies the requirement that there be substantial evidence that the defendant committed the crime. *Houston* v. *State*, 293 Ark. 492, 739 S.W.2d 154 (1987). Also, the victim's testimony that she was forcibly compelled, against her will, to submit to the rapist constitutes substantial evidence on which to base a conviction. *Taylor v. State*, 296 Ark. 89, 752 S.W.2d 2 (1988); *Lewis v. State*, 295 Ark. 499, 749 S.W.2d 672 (1988). It is the province of the jury to decide the credibility of the witnesses. *Taylor; Lewis*. We find ample evidence to support the jury's verdict.

Appellant also argues that the court erred in refusing to grant his motion in limine and allow him to impeach the credibility of the victim by questioning her about her conviction for hindering apprehension. Ark. R. Evid. 609(a) provides: "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) . . . or (2) involved dishonesty or false statement, regardless of the punishment." Appellant contends that hindering apprehension involves dishonesty or false statement.

Hindering apprehension, as defined in Ark. Code Ann. § 5-54-105(a) (1987) may be committed in six different ways. Only one involves giving false information. Appellant's counsel stated to the court in chambers, prior to convening in the courtroom, that he had a "motion *in limine*," and explained he had discovered that the victim had been convicted in Little Rock Municipal Court of a misdemeanor for hindering apprehension. Counsel told the court that the victim had helped someone evade arrest and he wanted to ask the victim about that. When the court inquired whether the victim had made a verbal or physical deceitful response to a question or whether she had physically hindered apprehension, counsel stated, "It's not clear." Although counsel did state to the

court that he knew no way "I can get into that other than to just start asking," we see nowhere in the record as abstracted where counsel called any witness to ask about the factual circumstances involved in the victim's conviction. Moreover, we do not see any place in the record where the court refused to let counsel ask a witness questions about this conviction. During the conference in chambers, the court told counsel:

> But just the fact that she was convicted of hindering apprehension in and of itself does not prove or I cannot take judicial notice of the fact that in and of itself it is a deceitful act because there are several ways that you can be guilty and be convicted of hindering apprehension . . . . So, the burden is on you and if you want to use it, get busy and show me that it's relevant and show me that you can prove that she was deceitful and that it has something to do with her credibility. If you can't do that, I'm not going to let you get it in.

Since there was no offer of proof as to the factual circumstances involved in the victim's conviction for hindering apprehension, we are unable to determine whether the conviction would have been admissible. *See* Ark. R. Evid. 103(a)(2).

█ Appellant does argue in his brief that it would be a mistake to require evidence of how the offense was committed before admitting the conviction into evidence. 3 Weinstein & Berger, *Weinstein's Evidence* § 609[04] at 609-84, 85 (1988) is cited for authority; however, that statement in *Weinstein* is made in face of the fact that *Weinstein* admits "a number of courts" have held otherwise. *See, e.g., United States* v. *Livingston,* 816 F.2d 184 (5th Cir. 1987), where the court said:

> Harrison, however, did not explain the nature of Collins' crime or whether it involved the element of intent to defraud. Thus, Harrison did not show that Collins' conviction involved "dishonesty or false statement."

816 F.2d at 190. *See also State* v. *Ellis,* 208 Neb. 379, 303 N.W.2d 741 (1981), where the court said:

> The defendant, in his offer of proof, having failed to show that the petit larceny offense of which the witness had been convicted involved deceit or deception so as to be classified

as "crimen falsi," the District Court was correct in prohibiting its introduction into evidence.

303 N.W.2d at 752. We believe that under the Arkansas statute on hindering apprehension, providing for six different ways in which the offense can be committed with only one involving dishonesty or false statement, evidence of a misdemeanor conviction for that offense was not admissible in this case for impeachment purposes until it was shown that the conviction was based upon an act of dishonesty or false statement.

Affirmed.

COOPER and JENNINGS, JJ., agree.